E-FILED
Monday, 06 April, 2026  12:16:46 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL BROWN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-1454** |
| | ) | |
| **PETERS,** *et al.*, | ) | |
| **Defendants.** | ) | |

**MERIT REVIEW ORDER**

Plaintiff, proceeding *pro se* and currently incarcerated at Illinois River Correctional Center ("Illinois River"), filed an Amended Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 11). The Court must "screen" Plaintiff's Amended Complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient, however. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**ALLEGATIONS**

Plaintiff files suit against Dietary Managers Brian Peters and Cory Willis, Dietary Supervisors Gregory Wilcoxen, Stacy Harminson, Tyson Reneau, Daniel Smithers, and Blanco, Grievance Officer Lynette Boughan, Counselor Hubbard, Chaplain Tammy Thousand, and Assistant Warden of Programs Sarah Arnett.

1

Plaintiff does not name Harmon and Knowles as Defendants in his Amended Complaint. Therefore, Defendants Harmon and Knowles are dismissed without prejudice.

Plaintiff states he has been a practicing Hebrew Israelite since 2004. As a practicing Hebrew Israelite, Plaintiff is required to abstain from consuming yeast or leaven for seven days during Passover and to remove all food items containing yeast or leaven from his dwelling.

At Illinois River, inmates are required to submit a request to the Chaplain at least 45 days prior to a religious celebration. Plaintiff alleges he submitted a request to Defendant Chaplain Thousand to participate in the Passover celebration from April 12-19, 2025. The day before Passover began, Plaintiff received notice from the Chaplain approving his request and instructing him to report to Dietary at sundown the following night.

During Passover on April 12-19, 2025, Plaintiff alleges Defendants Chaplain Thousand, Assistant Warden of Programs Arnett, and Dietary Managers Peters and Willis did not provide him with Passover meals and intentionally discriminated against him. Plaintiff alleges the Jewish inmates and Hebrew Israelite inmates were separated into two groups in the Dietary. The Jewish inmates received commercially prepared Passover meals, but Plaintiff and the other Hebrew Israelite inmates received meals containing yeast or leaven, which is forbidden to be consumed for Passover. Plaintiff alleges he suffered mental and physical harm because he was unable to fulfill the tenets of his religious beliefs and unable to receive nutrients from his meals.

During the first night of Passover on April 12, 2025, Plaintiff was served two breaded chicken patties, coleslaw, potato salad, beets, and four packets of saltine crackers. Plaintiff alleges the chicken patties and crackers contained yeast or leaven. Plaintiff alleges he immediately notified Defendant Dietary Supervisor Wilcoxen that his meal contained yeast or leaven. Plaintiff also asked Defendant Wilcoxen why the Jewish inmates received Passover meals, but the Hebrew

Israelite inmates had not. Defendant Wilcoxen allegedly told Plaintiff that Muslims get better treatment and walked away.

During the second night of Passover on April 13, 2025, Plaintiff was served baked chicken, two pieces of cornbread, mashed potatoes, greens, applesauce, and four packets of saltine crackers. Plaintiff alleges the cornbread and crackers contained yeast or leaven. Plaintiff alleges he told Defendant Dietary Supervisors Wilcoxen, Harminson, Reneau, and Blanco that his meal contained yeast or leaven, which is forbidden during Passover. Defendant Blanco allegedly told Plaintiff that he "did not have to eat it if he did not like it." (Doc. 11 at p. 14).

On April 14, 2025, Plaintiff received two turkey burgers, plain rotini noodles, cabbage, and an apple. On April 15, 2025, Plaintiff received two slices of lunchmeat, a slice of cheese, potato salad, and a veggie salad. On April 16, 2025, Plaintiff received a sloppy Joe, tater tots, mixed vegetables, and gelatin. On April 17, 2025, Plaintiff received two breaded chicken patties (containing yeast/leaven), two cooked potatoes, broccoli, and pudding. On April 18, 2025, Plaintiff received spaghetti with meat sauce, Florentine vegetables, salad, and an apple. On April 19, 2025, Plaintiff received four tamales, chili, rice, cooked carrots, and pudding.

Plaintiff filed multiple grievances regarding the meals he was served during Passover. (See Doc. 1-2). In response to Plaintiff's grievances, Defendant Counselor Hubbard stated he interviewed Dietary, and the chicken patties did not contain yeast or leaven. Although crackers were given with the meals, they did not have to be eaten. Defendant Hubbard also indicated that Plaintiff was not on the Jewish Passover list, and Jewish inmates receive the yeast/leaven-free Passover meals. Defendant Grievance Officer Boughan responded that the company that made the commercially prepared Passover meals was a certified and reputable company. Plaintiff alleges

Defendant Boughan's response did not address his grievance. Defendant Boughn recommended denying Plaintiff's grievances.

**ANALYSIS**

**I.　Free Exercise Clause of the First Amendment**

Individuals in custody have a First Amendment right to reasonable opportunities to practice their religion, subject to the legitimate penological concerns of the prison. *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011); *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). The Free Exercise Clause of the First Amendment prohibits the government from imposing a "substantial burden" on a "central religious belief or practice." *Isby-Israel v. Lemmon*, No. 13-172, 2016 WL 3072177, at *4 (S.D. Ind. June 1, 2016) (internal quotation omitted). "[A] substantial burden on the free exercise of religion . . . is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Id.* (quoting *Koger v. Bryan*, 523 F.3d 789, 798-99 (7th Cir. 2008)). Denying an inmate access to a diet that is required by his religion places a substantial burden on the inmate's free exercise rights. *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016).

Based on his allegations, the Court finds that Plaintiff has stated a plausible claim under the Free Exercise Clause of the First Amendment against Defendants Chaplain Thousand, Assistant Warden of Programs Arnett, Dietary Managers Peters and Willis, and Dietary Supervisors Wilcoxen, Harminson, Reneau, and Blanco based on the alleged denial of meals without yeast or leaven in compliance with his Hebrew Israelite faith during Passover on April 12-19, 2025.

## II.    Equal Protection Clause of the Fourteenth Amendment

The Equal Protection Clause forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "All equal protection claims . . . are based on the principle that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (citations omitted). To state an equal protection claim, a plaintiff must establish that a state actor treated him differently from others similarly situated because of his membership in a particular class and that the state actor did so purposefully. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), *abrogated by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) (citing *Washington v. Davis*, 426 U.S. 229, 239-42 (1976)). Discriminatory purpose "implies that the decision[-]maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (citation omitted).

Plaintiff alleges the Jewish inmates at Illinois River were served commercially prepared Passover meals without yeast or leaven, but Plaintiff and the other Hebrew Israelite inmates received meals that contained yeast or leaven during Passover on April 12-19, 2025. Based on his allegations, Plaintiff is permitted to proceed on a claim under the Equal Protection Clause of the Fourteenth Amendment against Defendants Chaplain Thousand, Assistant Warden of Programs Arnett, Dietary Managers Peters and Willis, and Dietary Supervisors Wilcoxen, Harminson, Reneau, and Blanco.

## III.    RLUIPA and IRFRA

Plaintiff alleges Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1(a), and the Illinois Religious

5

Freedom Restoration Act ("IRFRA"), 775 ILCS 35, *et seq*. Under RLUIPA, officials may not substantially burden an individual's religious exercise unless there is a compelling government interest at stake. RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Sovereign immunity shields state officials from monetary damages in their official capacity. *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011). RLUIPA allows for declaratory and injunctive relief, but not compensatory damages, and may be asserted against defendants in their official, but not individual capacities. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012).

The Court finds that Plaintiff has stated a plausible claim under RLUIPA and IRFRA against Defendants Chaplain Thousand and Assistant Warden of Programs Arnett, in their official capacities, as they appear to be the proper Defendants who would be responsible for ensuring any injunctive relief was carried out. *See Oliver. Harner*, No. 14-CV-315-NJR-DGW, 2016 WL 1117084, at *6 (S.D. Ill. Mar. 22, 2016) ("[T]he proper defendants are those who are responsible for ensuring that any injunctive relief is carried out.").

## IV.  Defendants Boughan, Hubbard, and Smithers

While Plaintiff is critical of how his grievances were handled, this is not enough to plead personal liability under § 1983 against Defendants Grievance Officer Boughan and Counselor Hubbard. "[T]he alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not

6

cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted).

Plaintiff named Dietary Supervisor Daniel Smithers as a Defendant, but he did not include any allegations in his Amended Complaint to demonstrate how he was personally involved in any constitutional deprivation. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

Defendants Boughan, Hubbard, and Smithers are dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

**IT IS THEREFORE ORDERED:**

1)      According to the Court's Merit Review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, Plaintiff may proceed on a claim under the Free Exercise Clause of the First Amendment and a claim under the Equal Protection Clause of the Fourteenth Amendment against Defendants Thousand, Sarah Arnett, Brian Peters, Cory Willis, Gregory Wilcoxen, Stacy Harminson, Tyson Reneau, and Blanco, in their individual capacities, and a claim under RLUIPA and IRFRA against Defendants Thousand and Sarah Arnett, in their official capacities. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2)      The Clerk is directed to ADD Sarah Arnett (Assistant Warden of Programs), Stacy Harminson (Dietary Supervisor), and Blanco (Dietary Supervisor) as Defendants.

3)      Defendants Harmon, Knowles, Smithers, Boughan, and Hubbard are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure

7

12(b)(6) and 28 U.S.C. § 1915A. The Clerk is directed to TERMINATE Defendants Harmon, Knowles, Smithers, Boughan, and Hubbard.

4)    This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5)    The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6)    Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7)    If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work

address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8)      This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9)      Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

10)     Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11)     Plaintiff shall be provided a copy of all pertinent medical records upon request.

12)     Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

9

13)      The Clerk is directed to set an internal court deadline 60 days from the entry of this

Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED:  4/6/2026

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

10